[Cite as *Plalan Lake Rd. Maintenance, Inc. v. Fabian*, 2026-Ohio-788.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| PLALAN LAKE ROAD MAINTENANCE, INC., et al., | **CASE NO. 2025-T-0020** |
| Plaintiffs-Appellees, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| JAMES FABIAN, et al., | Trial Court No. 2021 CV 00621 |
| Defendants-Appellants. | |

## OPINION AND JUDGMENT ENTRY

Decided: March 9, 2026
Judgment: Affirmed

*Brendan J. Keating*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellee, Chase Windell).

*Greg Bacon*, pro se, 4526 North Lake Road, West Farmington, OH 44491 (Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, 3435 Kent Road, Stow, OH 44224 (For Defendants-Appellants).

JOHN J. EKLUND, J.

{¶1} Appellants, James Fabian, Kathy Difford, Lori Benedetto, Randy Rutherford, and Tracie Morris, appeal from the judgment of the Trumbull County Court of Common Pleas, finding a settlement agreement to be enforceable. For the following reasons, we affirm the decision of the lower court.

{¶2} On June 8, 2021, Appellees, Plalan Lake Road Maintenance, Inc. (PLRM), Greg Bacon, and Chase Windell, filed a Complaint against the Appellants. PLRM is a

non-profit corporation that was established to own, operate, and maintain the roads within the Plalan Lakes Community. Bacon and Windell were trustees of PLRM. The Complaint alleged that although Appellees were voted as the new board of trustees during an "alleged meeting" of the lot owners in 2021, Bacon and Windell continued to be "the legal and rightful board of trustees" absent verification to the contrary. It requested that the court declare the rightful board and sought an injunction preventing Appellants from acting on PLRM's behalf. In Appellants' Answer and Counterclaim, they alleged that they were validly elected and requested the court to find Bacon and Windell were no longer trustees.

{¶3} The trial court issued an April 20, 2023 entry stating "counsel advised case settled. JE to follow." Appellants subsequently filed a motion to enforce settlement agreement. At a December 7, 2023 hearing, the magistrate indicated: "it is my understanding that . . . the Motion to Enforce is no longer needed because there was a slight change in the language of the settlement agreement that now everyone is in agreement with." Bacon, Windell, Fabian, Difford, Benedetto, Rutherford, and Morris verbally agreed and indicated they would sign the settlement agreement. On January 11, 2024, the court issued a judgment entry dismissing all claims and counterclaims "in accordance with the terms recited on the record."

{¶4} Appellees filed a motion to enforce settlement agreement on April 30, 2024. Attached was a copy of the settlement agreement signed by Greg Bacon, Windell, Fabian, Difford, Benedetto, Rutherford, and Morris, as well as third-party defendant Eric Bacon. In part, the settlement agreement stated that Appellants are the lawful trustees of PLRM and provided that "plaintiffs shall pay their own legal fees" and "defendants shall pay their own legal fees." It also included agreements about the validity of certain dues payments

and sale of land. At a hearing on the motion, Windell testified he believed the settlement agreement provided PLRM would pay the fees for plaintiffs and the defendants would pay their fees.

{¶5} The magistrate issued a February 21, 2025 decision, concluding that the settlement agreement was ambiguous regarding attorney fees. It determined that although PLRM was not named as a party in the settlement agreement, this was not "fatal to the enforcement of the settlement agreement because all those who could have claimed authority to bind the corporation were signatories to the settlement agreement." It rejected Appellants' argument that because they are the rightful trustees, PLRM "is now aligned with them and should be treated as a Defendant." It found that, construing the agreement against defendants, PLRM was to pay attorney fees as a plaintiff rather than a defendant. The trial court issued a March 25, 2025 judgment entry overruling objections to the magistrate's decision. It adopted the magistrate's decision and ordered that the settlement agreement is enforceable and that Appellants may not seek payment against Bacon or Windell.

{¶6} Appellants timely appeal and raise the following assignment of error: "The trial court erred as a matter of law by finding that the settlement agreement was fully enforceable."

**Settlement Agreements**

{¶7} The present appeal is from the judgment enforcing the parties' settlement agreement. "[T]he law favors the use of settlement agreements as a means of resolving pending actions." *Bromley v. Seme*, 2013-Ohio-4751, ¶ 18 (11th Dist.); *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 1996-Ohio-158, ¶ 7

Case No. 2025-T-0020

("settlement agreements are highly favored in the law"). "Since a settlement agreement is a contract, 'it must comply with the requirements of contract law.'" *Wilmington Savings Fund Soc., FSB v. Medvec Properties L.L.C.*, 2019-Ohio-4133, ¶ 21 (11th Dist.), quoting *Baumgartner v. AIM Leasing*, 2013-Ohio-883, ¶ 20 (11th Dist.). In reviewing a ruling on a motion to enforce a settlement agreement, "because the issue is a question of contract law, 'Ohio appellate courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. The standard of review is whether or not the trial court erred.'" *N.E. Cable Television Sys. v. Pantalone*, 2011-Ohio-6840, ¶ 8 (11th Dist.), quoting *Continental* at ¶ 6. "Accordingly, the question before us is whether the trial court erred as a matter of law in granting the motion to enforce the settlement agreement." *Id.* at ¶ 8.

{¶8} Appellants argue that PLRM could not be bound to the provisions of a settlement agreement to which it was not a party, rendering it unenforceable against PLRM and in relation to any finding regarding its payment of attorney fees.

**Binding a Non-profit Corporation to Settlement Agreement**

{¶9} The settlement agreement was signed by plaintiffs Bacon and Windell and the five defendants-trustees. Appellants are correct that it was not explicitly indicated that the parties were signing on behalf of PLRM, as trustees, or that PLRM was a party to the settlement agreement. However, the circumstances of this matter indicate that PLRM should be bound by the settlement agreement.

{¶10} "Fundamentally, a corporation may act only through the acts of its agents, such as its directors, officers, or employees . . . ." *Flarey v. Youngstown Osteopathic Hosp.*, 2002-Ohio-6899, ¶ 11 (7th Dist.). "Except where the law, the articles, or the

Case No. 2025-T-0020

regulations require that action be otherwise authorized or taken, all of the authority of a corporation shall be exercised by or under the direction of its directors." R.C. 1702.30(A).[1] In the present matter, the code of regulations for PLRM provides that there are five members of the board of trustees. The five defendant-trustees elected in 2021 were all parties to the lawsuit. Further, two former trustees, those who disputed whether the newly elected trustees validly held office, were the plaintiffs in the lawsuit. Thus, all people with alleged authority to bind PLRM signed the agreement. It appears that all of these parties intended the settlement agreement to apply to PLRM, as there were provisions that related to PLRM's operation as an entity, such as setting the annual dues for members of PLRM and allowing waiver of back dues, agreeing on lots offered for sale to neighbors and providing that money from such purchases would be deposited into a PLRM account, and determining PLRM's lawful trustees. "In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). While the settlement agreement affected the individual parties in that it resolved their positions as trustees, a review of the entirety of the settlement agreement demonstrates it also impacted PLRM and the signators' positions as part of PLRM were intertwined with their individual rights in the litigation. *See Wise v. Duker*, 57 Ohio App.3d 62, 64-65 (9th Dist. 1988) ("the court should look to the entire document to determine representative capacity").

---

1. "For the purpose of a nonprofit corporation, the word 'director' is synonymous with the term 'trustee.'" *Tuttle v. Collins*, 2020-Ohio-4062, ¶ 29, fn. 4 (8th Dist.), citing R.C. 1702.01(K) ("'Directors' means the persons vested with the authority to conduct the affairs of the corporation irrespective of the name, such as trustees, by which they are designated.").

Case No. 2025-T-0020

{¶11} Courts have found a corporation to be bound to a contract where the corporate representatives did not explicitly sign in their capacity as representatives but other facts demonstrated the intention to bind the corporation. *See J.D.S. Properties v. Walsh*, 2009-Ohio-367, ¶ 20 (8th Dist.) (while the president of the corporation "signed the Lease in his name, without indicating his corporate capacity," the terms of the lease indicated that it bound the corporation); *State ex rel. Spies v. Lent*, 2009-Ohio-3844, ¶ 56-69 (5th Dist.) (while the agreement was not signed by the members "in their corporate capacity," it bound a limited liability company where all members agreed to it and the terms related to action to be taken by the limited liability corporation).

{¶12} Further, as emphasized by Appellee both in his brief and at oral argument, following the settlement by the parties in 2023, the trial court issued a judgment entry dismissing the matter with prejudice and ordering that "[t]he parties are responsible for their own costs and legal fees." PLRM was a party to this action subject to this order. This is further consistent with the trial court's 2025 judgment that Appellants cannot seek payment of attorney fees by Bacon and Windell on PLRM's behalf.

**Application of R.C. 1702.12(E)**

{¶13} Appellants also contend that R.C. 1702.12(E)(4) applies to require members of PLRM to indemnify Appellees and that "any parts of the settlement agreement which directly affected PLRM would need to be authorized by its members."

{¶14} Pursuant to R.C. 1702.12(E)(1):

A corporation may indemnify or agree to indemnify any person who was or is a party . . . to any . . . civil . . . suit . . . , other than an action by or in the right of the corporation, by reason of the fact that the person is or was a director . . . of the corporation . . . against expenses, including attorney's fees, judgments, fines, and amounts paid in settlement actually and reasonably incurred by the person in connection with such action, suit, or proceeding, if the person acted in good faith and in a manner the person

Case No. 2025-T-0020

reasonably believed to be in or not opposed to the best interests of the corporation . . .

Section (E)(2) provides that the corporation may indemnify a director against expenses and fees under the same circumstances if such director is a party to a "suit by or in the right of the corporation to procure a judgment in its favor."

{¶15} Section (E)(4) provides: "Unless ordered by a court and subject to division (E)(3) of this section, any indemnification under division (E)(1) or (2) of this section shall be made by the corporation only as authorized in the specific case, upon a determination that indemnification of the director . . . is proper in the circumstances because the person has met the applicable standard of conduct set forth in division (E)(1) or (2) of this section. Such determination shall be made in any of the following manners:" (a) by a majority vote of the quorum of directors of the corporation who were not parties to the suit; (b) "if a majority of a quorum of disinterested directors so directs, in a written opinion by independent legal counsel"; (c) by the members; or (d) by the court of common pleas.

{¶16} The foregoing statutes provide that a corporation may indemnify its directors in connection with litigation if that director acted in good faith, provided that disinterested directors, independent legal counsel, the members, or the court make a determination that the standard of conduct is met. Here, there is no indication that a finding under R.C. 1702.12(E)(4) was made by the court, legal counsel, or members, and it appears all directors of the corporation were parties to the litigation.

{¶17} Nonetheless, we do not find that this statute applies to invalidate the lower court's enforcement of the settlement agreement. The statute relates to the corporation agreeing to indemnify directors/trustees. Here, the settlement agreement provided that "plaintiffs shall pay their own legal fees" and "defendants shall pay their own legal fees."

Case No. 2025-T-0020

It did not provide that any parties were not responsible for their attorney fees or that PLRM would cover any additional fees which had accrued on behalf of any trustee. From the facts in the record, it appears that PLRM paid the retainer fee to initiate the litigation but that it was also one of the parties to the lawsuit. The fact that it paid fees when initiating litigation does not amount to an agreement to indemnify, defined as "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default . . . ." *Black's Law Dictionary* (12th Ed. 2024). Arguably, the fees were expended by PLRM to reach a determination as to its leadership to be able to proceed with conducting business. Whether PLRM should have expended these fees when Appellants had already been appointed its new directors differs from whether it agreed to indemnify the parties. Had Appellants believed PLRM should not have expended such funds initiating litigation, they could have ensured that the settlement agreement indicated more explicitly whether PLRM should be compensated for any fees it had expended.

{¶18} To the extent that Appellants argue that PLRM's members had to approve any action relating to the settlement agreement on behalf of PLRM, we disagree. As noted above, R.C. 1702.30(A) provides that trustees are permitted to exercise authority on behalf of the non-profit corporation except where its regulations provide otherwise. Appellants do not point to a provision in the regulations requiring the members to vote on actions such as entering into settlement agreements, and the regulations allow the trustees to enter into contracts on behalf of the corporation for administrative services as well as to disburse fees "necessary to continue the Corporation's existence." In the

Case No. 2025-T-0020

absence of an argument to the contrary, we do not find that the trustees went outside of their authority to enter the settlement agreement in the present matter.

{¶19} The sole assignment of error is without merit.

{¶20} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2025-T-0020

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignment of error is without merit. The order of this court is that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Costs to be taxed against Appellants.

_____
JUDGE JOHN J. EKLUND

_____
JUDGE EUGENE A. LUCCI,
concurs

_____
JUDGE ROBERT J. PATTON,
concurs

| **THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY** |
|---|
| A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure. |

Case No. 2025-T-0020